IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| KAREN KIMBLETON, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | C.A. No. 12-974-GMS |
|  | ) |  |
| VINCENT WHITE, *et al.*, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

## **MEMORANDUM**

### **I.  INTRODUCTION**

The plaintiff, Karen Kimbleton ("Kimbleton"), filed this lawsuit against the Delaware Real Estate Commission (the "Commission"), a former commissioner of the Commission, Vincent White ("White"), and two investigators for the Delaware Department of State, Division of Professional Regulation ("DPR"), Layton Ward ("Ward") and Bud Mowday ("Mowday") (collectively, "Defendants") on July 24, 2012. (D.I. 1.) The Complaint raises a number of claims relating to complaints that were made to the DPR against Kimbleton, subsequent investigations related to such complaints, and the disciplinary action taken by the Commission as a result of such investigations. Specifically, Kimbleton asserts two separate claims under 42 U.S.C. § 1983: (1) a First Amendment retaliation claim against White alone, and (2) a Fourteenth Amendment due process claim against the Commission, White, and Ward for actions taken against Kimbleton in violation of her due process rights. (*Id.* at ¶¶ 78–87.) Additionally, Kimbleton asserts two state law claims for (1) tortious interference with business relations against all Defendants, and (2) fraudulent misrepresentation against investigators Ward and

Mowday. (*Id.* at ¶¶ 88–99.) Kimbleton has sued the Defendants individually and in their respective official capacities.

Presently before the court are the Defendants' motion to dismiss for failure to state claim and motion for summary judgment. (D.I. 7; D.I. 51). For the reasons stated below, the court will grant Defendants' motion for summary judgment and deny the motion to dismiss as moot.

## II. BACKGROUND

In 1999, Kimbleton became a licensed real estate agent in the state of Delaware, and in approximately 2002, she became a licensed real estate broker in Delaware as well. (D.I. 56 at 1–2.) Since approximately 2002, Kimbleton owned a Re/Max branch located in Dover, Delaware. (D.I. 51 at 3). Between 2008 and 2009, three separate individuals made complaints against Kimbleton to the DPR—a division of Delaware's Department of State that oversees licensing of various professions. (*Id.* at 3–4.) The complaints alleged various improper actions by Kimbleton, including failure to sign real estate listings, obtaining improper "assurance monies" from tenants, and filing suit against the buyers in a home purchase agreement. (*Id.* at 4.)

Defendant Ward investigated the complaints, and ultimately the Delaware Department of Justice ("DOJ") merged the individual complaints into a single amended complaint, filed with the Commission. (*Id.*) A hearing was held on or about August 12, 2010, which was continued and resumed on August 23, 2010. (*Id.*) Defendant White, who was Chairman of the Commission at the time, presided over the August 2010 hearings. (D.I. 56 at 6.) Throughout the hearing, Kimbleton was represented by counsel and had the opportunity to present and cross-examine witnesses. (D.I. 51 at 4.) After the conclusion of the hearing, the Commission found Kimbleton guilty and suspended her brokerage license for six months, during which time

Kimbleton could remain as a real estate agent, but would be required to hire another broker to complete real estate transactions. (D.I. 56 at 6.) The Commission also imposed a probationary period after the six-month suspension ended. (*Id.*)

Kimbleton subsequently appealed the Commission's decision to the Delaware Superior Court. (D.I. 51 at 5.) Furthermore, beginning in October 2010, Kimbleton, believing that the discipline and penalties imposed by the Commission were disproportionate, sent a series of letters to her state legislators and the ACLU, criticizing White, the Commission, and several members with DPR, including Ward. (D.I. 56 at 8.) In her letters, Kimbleton alleged that she was the victim of sex and age discrimination at the hands of the Defendants, and that she was being harassed, targeted, and unfairly disciplined. (*Id.*) Kimbleton asserts that she wrote to Delaware Senator Brian Bushweller, who allegedly followed up with the DPR about her concerns. The parties dispute whether White ever received noticed of Kimbleton's letters. (D.I. 51 at 13–14; D.I. 56 at 17 & n. 53)

During the six-month suspension and after Kimbleton filed her appeal, the DPR received additional complaints from the public about Kimbleton's practice. (D.I. 51 at 6). The new complaints included allegations that Kimbleton held herself out as a broker during a settlement, in violation of her suspension. (*Id.*) These complaints were again investigated by Ward for the DPR, and again forwarded to the DOJ for possible prosecution. (*Id.*) Again, the DOJ filed a complaint ("Second Complaint") seeking discipline with the Commission. (*Id.*)

Faced with the apparent threat of a possible five-year suspension if found guilty of the charges in the Second Complaint, Kimbleton entered into a Consent Agreement with the DOJ.[1] (D.I. 51 at 6). By signing the Consent Agreement, Kimbleton agreed to an additional suspension of nine months, thereby avoiding the alleged possible five-year suspension. (*Id.* at 6–7.) The

---

[1] A copy of the Consent Agreement can be found in D.I. 53 at A393.

Consent Agreement provided that following the expiration of the nine-month suspension, Kimbleton was could reapply for a salespersons' license, which was to be granted as long as Kimbleton completed an approved course on Delaware's Landlord Tenant Code and residential property management. (*Id.* at 7.) As an additional condition of the Consent Agreement, Kimbleton stipulated to a voluntarily dismissal with prejudice of her appeal of the Commission's first punishment still pending before the Delaware Superior Court. (*Id.*) In filing this lawsuit, Kimbleton claims that she was coerced and under duress when she entered into the Consent Agreement. (D.I. 1, ¶ 46.) Counsel represented Kimbleton throughout the course of the second investigation, including entering into the Consent Agreement. (D.I. 51 at 6).

On or about November 2, 2011, Defendant White filed a complaint with the DPR. (D.I. 56 at 11.) Defendant White claimed that he anonymously received a printed map with advertisements indicating that Kimbleton was continuing to hold herself out as a broker, and he submitted a complaint to the DPR for further investigation. (D.I. 51 at 8). As part of the investigation, Defendant Ward went to Kimbleton's office and found a stack of phone books with advertisements, on which Kimbleton was listed as a broker. (D.I. 56 at 11.) Subsequently, at the request of Ward, Defendant Mowday visited Kimbleton's Re/Max office to further investigate. (*Id.* at 12.) Pretending to be an interested homebuyer, Mowday requested some materials, including the phonebook advertisements and a map. (*Id.*) Neither Ward nor Mowday attempted to ascertain the age of these materials, nor did they determine whether Kimbleton intended to publicly disseminate them at the time. (*Id.*) As a result of these investigations, the DOJ brought new charges against Kimbleton, but the complaint was ultimately dismissed. (*Id.*) Although the original suspension has been served, Kimbleton has not reapplied for her broker's

4

license with the Commission because she "did not feel [she] would get a fair shot" based on her experiences. (Kimbleton 3/5/14 Dep. at 114, 118.)

In her complaint, Kimbleton raises four causes of action against the Defendants. First, Kimbleton claims that White violated 43 U.S.C. § 1983 by retaliating against her for the exercise of Kimbleton's First Amendment rights. Specifically she argues that White's complaint to the DPR concerning the map with Kimbleton's advertisement was in response to letters that were critical of White, which Kimbleton submitted to legislators and the ACLU. (D.I. 1, ¶¶ 76–77.) Second, Kimbleton asserts a § 1983 action against the Commission, White, and Ward for violations of her Fourteenth Amendment Due Process rights. 43 U.S.C. § 1983. Specifically, Kimbleton argues that she was the subject of a biased investigation, that the Commission abused its discretion by imposing penalties that were disproportionate, arbitrary, and capricious. She further contends that her license was suspended without fair hearing or opportunity to be heard—all in violation of her substantive and procedural due process rights. (D.I. 1, ¶¶ 82–86.) Third, Kimbleton asserts a claim for tortious interference with business relationships under Delaware common law against all Defendants. Specifically, Kimbleton argues that the Defendants' actions interfered with her business relationships and resulted in economic harm. (*Id.* ¶¶ 89–93.) Finally, Kimbleton accuses Ward and Mowday of fraudulent misrepresentation in violation of Delaware common law. Specifically, Kimbleton argues Ward and Mowday unlawfully misrepresented their identities to conduct an unjustified investigation of Kimbleton. (*Id.* ¶¶ 96–99.)

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also* Celotex *Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986). A fact is material if it "could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). There is a genuine issue "if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* When determining whether a genuine issue of material facts exists, the district court must view the evidence in the light most favorable to the nonmoving party and draw inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party must then "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citing FED. R. CIV. P. 56(e)).

The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* The party opposing summary judgment must present more than just "mere allegations, general denials, or . . . vague statements" to show the existence of a genuine issue. *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). As such, a nonmoving party must support their assertion that a material fact is in dispute by: "(A) citing to

6

particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of its case for which it has the burden of proof. *Celotex*, 477 U.S. at 322.

## IV. DISCUSSION

Defendants assert that Kimbleton's claims are barred because (1) Eleventh Amendment sovereign immunity bars actions against state actors, (2) the Commission is not subject to suit under § 1983, (3) the *Rooker-Feldman* doctrine and res judicata bar this court from exercising jurisdiction, and (4) Kimbleton failed to exhaust administrative remedies. Additionally, Defendants' contend that Kimbleton has failed to adduce sufficient evidence in any of its four claims to establish a *prima facie* case. Finally, Defendants argue that even if the claims are allowed, the Defendants are entitled to either absolute or qualified immunity.

Conversely, Kimbleton argues that there is no Eleventh Amendment immunity for individual officers and that the *Rooker-Feldman*, res judicata, and exhaustion doctrines do not apply. Additionally, she argues that she has satisfied her burden of proof for each of her asserted claims. Finally, she argues that there is neither absolute nor qualified immunity for any of the Defendants. The court examines the parties' arguments below.

7

## A. Eleventh Amendment Immunity/Persons under § 1983

The Eleventh Amendment prevents federal courts from entertaining "any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state." U.S. CONST. amend. XI. Therefore, in general, states and their agencies and departments are immune from suit brought by private parties in the federal courts, "regardless of the nature of the relief sought." *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100 (1984). The only exceptions to this general rule are where the state has consented to suit or where Congress has clearly indicated its intent to abrogate state immunity. *Id.* at 98–100. In both exceptions, intent to permit suit must be "unequivocally expressed." *Id.* at 99.

The Eleventh Amendment, however, does permit suits for prospective injunctive relief against state officials acting in violation of federal law. *Ex parte Young,* 209 U.S. 123 (1908). The *Ex parte Young* doctrine is an exception to the general rule that a lawsuit brought "nominally against an officer" will be treated as being "against the sovereign if the decree would operate against the latter." *Pennhurst,* 465 U.S. at 101. Retroactive monetary relief is still prohibited, as with suits against the states. *Edelman v. Jordan,* 415 U.S. 651, 666–67 (1974). But the *Ex parte Young* doctrine "allows courts to order prospective relief, as well as measures ancillary to appropriate prospective relief." *Frew v. Hawkins,* 540 U.S. 431, 437 (2004) (internal citations omitted). However, *Ex parte Young* does not give plaintiffs carte blanche to bring lawsuits against state officials. The doctrine applies only in "cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past." *Papasan v. Allain,* 478 U.S. 265, 277–78 (1986). Additionally, the Supreme Court has concluded that the *Ex parte Young* doctrine does not apply in suits against state officials on the basis of state law. *Pennhurst,* 465 U.S. at 106. In such

cases "the entire basis for the doctrine . . . disappears." *Id.*[2]

In this case, there is no question that the Commission, a Delaware state agency, is immune from suit. In fact, in neither of her briefs filed in response to Defendants' motion to dismiss and motion for summary judgment does Kimbleton make a single argument that the Commission is not immune to suit. The state has not consented to be sued in this case, and Congress has not abrogated state immunity for § 1983 actions.[3] The Commission is immune under the Eleventh Amendment, and summary judgment is appropriate concerning all claims asserted against the Commission.[4]

Furthermore, White, Ward, and Mowday are also immune from suit for actions taken in their official capacity. First, as previously stated, *Ex parte Young* does not apply to Kimbleton's state law claims for tortious interference with business relationships and fraudulent misrepresentation. *See Pennhurst*, 465 U.S. at 106. These claims are against state officers acting in their official capacity and as such should be addressed by Delaware state courts. Second, *Ex parte Young* does not apply to Kimbleton's § 1983 retaliation claim against White or the alleged due process violations by White and Ward. Kimbleton does correctly point out that injunctive relief may be obtained from state officers under *Ex parte Young*, and that she is indeed seeking injunctive relief, *i.e.*, reinstatement of broker's license. (D.I. 10 at 29–30.) However, neither White nor Ward is capable of providing her this relief. White is no longer a member of the Commission, and Ward is an investigator with the DPR, without the power to reinstate

---

[2] "A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Pennhurst*, 465 U.S. at 106.

[3] The required "clear indication" from Congress is "lacking in 42 U.S.C. § 1983, which provides for causes of action against 'persons,' not 'states.'" *Smith v. Delaware*, 745 F. Supp. 2d 467, 479 (D. Del. 2010) (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989)).

[4] Additionally, the Commission cannot be sued under § 1983 because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989).

9

Kimbleton's license. Rather, reinstatement of Kimbleton's license would require state action alone. As stated above, lawsuits brought "nominally" against an individual officer will be barred where "the decree would operate against the [state]." *Pennhurst*, 465 U.S. at 101.[5]

In light of the foregoing, the grant of summary judgment is appropriate as to the claims against White, Ward, Mowday for all actions taken in their official capacity. Thus, all that remains are Kimbleton's claims against the defendants White, Ward, and Mowday in their personal capacities.

**B. Sufficiency of Evidence**

Defendants contend that, in light of the undisputed facts, there is no genuine issue for the fact finder as to any of Kimbleton's four claims. The court will take each of them in turn.

1. First Amendment Retaliation

Kimbleton asserts that the complaint White filed with the DPR was retaliation for the letters she wrote to various parties naming and criticizing White for alleged misconduct during Kimbleton's first investigation and hearing before the Commission. Kimbleton maintains her letter writing was protected First Amendment speech.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111–12 (3d Cir. 1990). It has long been established that the First Amendment bars retaliation for protected speech. *See Crawford–El v. Britton*, 523 U.S. 574, 592 (1998); *Milhouse v. Carlson*, 652 F.2d 371, 373–74 (3d Cir. 1981). Proof of a retaliation claim requires the plaintiff to demonstrate (1) she engaged in protected activity; (2) she was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's

---

[5] Moreover, there is no "ongoing" harm for injunctive relief to address: the suspension has run its course, and Kimbleton has not applied for reinstatement. *See Papasan*, 478 U.S. at 277–78.

10

decision to take adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). The Third Circuit has stated that "[g]overnment actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). Claims of unconstitutional retaliation must, however, be evaluated critically, as they are "fraught with the potential for abuse." *See Blizzard v. Hastings*, 886 F. Supp. 405, 409 (D. Del. 1995).

Although Defendants challenge each of the three prongs necessary to establish a § 1983 retaliation claim, they primarily assert that Kimbleton cannot satisfy the third prong: that her activity was a "substantial motivating factor" in the adverse action taken by White. First, the Defendants contend that Kimbleton has failed to provide evidence that White was even aware of Kimbleton's letters. Thus, they maintain, the letters could not have been a substantial motivating factor for White to submit his complaint. Second, even if he knew of them, any connection between the submission of the letters and White's complaint to the DPR is seriously undermined by the fact that more than one year lapsed between the two events.

The parties dispute whether White was aware of the letters sent by Kimbleton. In his April 2014 deposition, White stated that he was never informed that Kimbleton had made allegations against him. (White 4/30/14 Dep. at 79–80.) In her March 2014 deposition, Kimbleton stated that she assumed White had learned of her letters because an aide to Senator Bushweller told her that the Senator had made a call to the DPR about the letters. (Kimbleton 3/5/2014 Dep. at 127–29.) Additionally, Kimbleton asserts that copies of her letter to Senator Bushweller had been forwarded to several members of the DPR, and it was reasonable to infer that White would have learned of the complaints. (D.I. 56 at 17 n. 53). Although this inference

11

might face several evidentiary pitfalls, the court cannot say *as a matter of law* that White had no knowledge of them, as required at the summary judgment stage. Indeed, the court must view the evidence in a light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Kimbleton has pointed to sufficient evidence in the record to allow a reasonable jury to potentially infer White's knowledge.

Nonetheless, the court finds that Kimbleton still cannot satisfy her burden of proof regarding the third prong of the retaliation standard. To prove that the adverse conduct was substantially motivated by the protected activity, Kimbleton must demonstrate a "causal connection," either by pointing to "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F. 3d 259, 267 (3d Cir. 2007). In this case, the parties do not dispute that Kimbleton wrote her letters sometime in October 2010, and White submitted his complaint to the DPR on November 2, 2011—a span of at least twelve months. Kimbleton has failed to cite any facts that allow the court to conclude this to be an unusually "suggestive temporal proximity" or that demonstrate a pattern of antagonism.[6] In the absence of specific proof, the "plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation" *Id.* Here, the record as a whole does not support an inference of causation. The alleged retaliatory conduct was remote in time (more than a year later), and there was no "time plus" other acts to suggest antagonism. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000).

---

[6] In her briefs, Kimbleton repeatedly points to the allegedly coercive Consent Agreement negotiations as support of both temporal proximity (the negotiations took place in March 2011) and a pattern of antagonism. (D.I. 10 at 15–16; D.I. 56 at 17.) However, the supposed threat of a five-year suspension is irrelevant because (1) it is not the alleged retaliation at issue, and (2) White took no part in the negotiations.

12

Kimbleton correctly states that she has sufficiently "pled" her claim, but now at the summary judgment stage she must satisfy Rule 56's requirement. (D.I. 56 at 16.) This she has failed to do, and the court will grant summary judgment on Kimbleton's § 1983 retaliation claim.

2. Fourteenth Amendment Due Process Violations

Kimbleton asserts that the investigations, hearings, and ultimate punishments carried out by the DPR and the Commission constituted violations of her due process rights. Although ostensibly claiming violations of both substantive and procedural due process, Kimbleton makes clear in her briefs that she is arguing only a substantive due process violation.[7] Specifically, Kimbleton alleges that the Defendants' actions were done in bad faith and with improper motive. (D.I. 56 at 14–16). Against Ward, Kimbleton asserts that he instituted baseless disciplinary actions before the Commission, falsely testified under oath, and improperly investigated her. (*Id.* at 15). Against White, Kimbleton asserts that he instituted a "bogus complaint" against her, which was ultimately dismissed. (*Id.* at 16.)

The substantive component of the Fourteenth Amendment Due Process Clause "limits what governments may do regardless of the fairness of procedures that it employs, and covers government conduct in both legislative and executive capacities." *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir. 2000). However, in the context of § 1983 claims and non-legislative action, "a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118, 123 (3d Cir. 2000). Assuming, the property interest "falls within the ambit of substantive due process," the government cannot take

---

[7] In her response briefs to both the Defedants' motion to dismiss and motion for summary judgment, Kimbleton states merely that "Plaintiff has sufficiently alleged a substantive due process claim." (D.I. 10 at 18; D.I. 56 at 14). Kimbleton provides no discussion as to her procedural due process claim. As such, it will be considered waived.

13

it away for reasons that are "arbitrary, irrational, or tainted by improper motive," or through conduct that "shocks the conscience." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000) (internal quotations marks omitted).

To establish a protected property interest, a plaintiff "must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Kimbleton cites *C & C Construction & Rehabilitation Specialists, Inc. v. Wilmington Housing Authority* to support her argument that she has established her protected property interest. No. 95-756-SLR, 1996 WL 190011, at *2 (D. Del. Mar. 20, 1996) ("In cases concerning professional licenses, no entitlement need be shown because of the underlying liberty interest in practicing one's chosen profession."). Accepting this proposition, the court finds that Kimbleton still has not put forth sufficient evidence to satisfy the second prong of the substantive due process analysis—that the government's actions were arbitrary, irrational, tainted by improper motive, or that they "shocked the conscience."

Kimbleton states that she "has sufficiently alleged a substantive due process claim." (D.I. 56 at 14). But as already noted, she must provide more than "mere allegations, general denials, or . . . vague statements" to survive a motion for summary judgment. *Quiroga*, 934 F.2d at 500. Kimbleton contends that Ward instituted baseless complaints and disciplinary actions against Kimbleton. (D.I. 56 at 15). However, the undisputed facts in the record confirm that Ward investigated complaints that were submitted to the DPR by third parties and then made recommendations to the DOJ whether to proceed with a complaint before the Commission. The DOJ ultimately filed disciplinary action against Kimbleton. Kimbleton's only citation to the record in support of her allegation that Ward improperly investigated is her own affidavit stating that Ward's conduct was "bizarre and biased" and that he had made inappropriate comments to

14

her during his initial investigation. (D.I. 56, Ex. 78, ¶¶ 23–29). The allegations that Ward lied about speaking to witnesses are not supported by the record.

Finally, Kimbleton has failed to demonstrate how any actions taken as a result of the so-called "bogus complaint" filed by White constituted a substantive due process violation. Her license had already been suspended. Kimbleton cannot provide any evidence showing that her legitimate expectancy in having her license reinstated was denied as a result of the charges accompanying White's complaint that were ultimately dropped. Indeed, Kimbleton has never sought reinstatement of her license through the administrative process set forth in the Consent Agreement. (Kimbleton 3/5/14 Dep. at 114, 118.)

In sum the record is wholly devoid of evidence that would support a claim that White or Ward acted improperly, to an extent that violates substantive due process under the Fourteenth Amendment.[8] The court will grant summary judgment on Kimbleton's § 1983 due process claim.

### 3. Tortious Interference with Business Relationships

Kimbleton contends that the suspension of her license interfered with potential business relationships with prospective home buyers, thus harming her business.

Under Delaware law, a claim for tortious interference with business relationships must satisfactorily demonstrate: (1) the reasonable probability of a business opportunity; (2) intentional interference; (3) proximate causation; and (4) damages. *Murphy v. Bancroft Constr. Co.*, No. 02-453-SLR, 2003 WL 22119187, at *5 (D. Del. Sept. 8, 2003) (citing *DeBonaventura*

---

[8] Kimbleton asserts additional alleged due process violations against the Commission for permitting certain evidence during her hearing, and against the DOJ for improperly coercing her into signing the Consent Agreement. (D.I. 14–16). Because the Commission is immune from suit and the DOJ is not a party, the court will not address these allegations.

15

*v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del. Super. Ct. 1981). Such claims are subject to privilege, however. The propriety of the defendant's conduct in interfering with contractual relationships depends on several factors: (1) the nature of the actor's conduct; (2) the actor's motive; (3) the interest of the other with which the actor's conduct interferes; (4) the interests sought to be advanced by the actor; (5) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (6) the proximity or remoteness of the actor's conduct to the interference; and (7) the relations between the parties. *Id.* (citing Restatement (Second) of Torts § 767).

Kimbleton cannot satisfy the first element requiring a "reasonable probability of a business opportunity" by alleging interference with a class of all "prospective home buyers." Delaware law permits a broad range of legitimate business expectancies, including the "prospect of . . . [any] relations leading to potentially profitable contracts." *Lipson v. Anesthesia Servs., P.A.*, 790 A.2d 1261, 1285 (Del. Super. Ct. 2001) (quoting Restatement (Second) of Torts § 766B). The "mere 'perception,' [however,] of a prospective business relationship or contract will not 'form the basis of a *bona fide* expectancy.'" *Id.* (emphasis in original). Here, Kimbleton has not identified any specific contracts with potential home buyers that were lost as a result of the disciplinary action and fails to cite any case where such a nebulous, unascertainable class was found sufficient to satisfy the first element of the tortious interference claim. As such, Kimbleton only possessed the perception of a business relationship, which is insufficient to make out a cause of action.

Even assuming the first element was satisfied, Kimbleton claim would still fail for two reasons. First, any interference that existed came as a result of the suspension handed down by the Commission. As already discussed, the Commission is immune from suit. The actions of

16

defendants White, Ward, and Mowday would not be the proximate cause of Kimbleton's harm, as required by the third element. Second, Kimbleton has cited no case supporting her proposition that the suspension of a professional license by a government agency is subject to a tortious interference claim. Indeed, the privilege factors already noted suggest that the Defendants' actions would be privileged, even if Kimbleton were able to satisfy all the requisite elements.[9]

The court will grant summary judgment on Kimbleton's state law tortious interference with business relationships claim.

### 4. Fraudulent Misrepresentation

Kimbleton asserts a fraudulent misrepresentation claim against Ward and Mowday for misidentifying themselves while investigated a complaint against her. Specifically, Mowday posed as an interested home buyer when he visited Kimbleton's office to investigate White's complaint that Kimbleton was continuing to hold herself out as a broker while serving her suspension.

Under Delaware law, a claim for fraudulent misrepresentation must demonstrate that: (1) the defendant made a substantial, material misrepresentation respecting the transaction; (2) the representation must be false; (3) the defendant must have known the representation was false when he made it; (4) the defendant made the representation with the intention of inducing the plaintiffs to act upon it; and (5) the plaintiff acted in reliance on the statement and was harmed as

---

[9] The factors are: (1) the nature of the actor's conduct; (2) the actor's motive; (3) the interest of the other with which the actor's conduct interferes; (4) the interests sought to be advanced by the actor; (5) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (6) the proximity or remoteness of the actor's conduct to the interference; and (7) the relations between the parties. *Murphy*, 2003 WL 22119187, at *5. Although a full discussion of the factors is unnecessary, even a cursory evaluation suggests that lawful agency oversight over the regulated profession is a privileged interference.

17

a result. S.C. Johnson & Son, Inc. v. Dowbrands, Inc., 167 F. sup. 2d 657, 674 (D. Del. 2001) (citing *Lock v. Schreppler,* 426 A.2d 856, 861 (Del. Super. Ct. 1981)).

Kimbleton has provided no support in Delaware case law for the proposition that fraudulent misrepresentation claims can be asserted outside the realm of contract law, and this court is not convinced that the claim has any application to the case at hand. The inclusion of the term "transaction" in element (1) above confirms that the cause of action aims to address contractual disputes.[10] Here, Kimbleton asserts the claim against Ward and Mowday not for anything related to contracts but for doing precisely what they are employed to do: investigate potential violations. Even if it is customary for DPR investigators to identify themselves, there still would be no cause of action for fraudulent misrepresentation. Kimbleton fails to point to any authority suggesting that it was wrongful for Mowday to misrepresent his identity during the investigation. The only law Kimbleton cites—the Delaware Tort Claims Act—is inapposite. (D.I. 56 at 18–19).[11] Kimbleton's fraudulent misrepresentation claim is meritless.

The court will grant summary judgment on Kimbleton's state law fraudulent misrepresentation claim.

## V. CONCLUSION

For the foregoing reasons the court will grant the Defendants' motion for summary judgment on all claims against the Commission and all claims against White, Ward, and Mowday

---

[10] The Restatement (Second) of Torts defines fraudulent misrepresentation as "fraudulently making a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it." Restatement (Second) of Torts § 525 (1977). Although the definition does not expressly limit itself to contract claims, each of the listed examples in the Comment pertain to contract disputes.
[11] The Delaware Tort Claims Act, 10 Del. Code § 4001 *et seq.*, establishes the immunity rules for tort claims brought against Delaware state officials. It is irrelevant to the application of Kimbleton's fraudulent misrepresentation claim to these facts.

18

in their official and individual capacities.[12] Furthermore, having granted summary judgment, the court denies the Defendants' previous motion to dismiss for failure to state a claim as moot.

Dated: September 4, 2014

                                              UNITED STATES DISTRICT COURT

---

[12] Having decided the motion on other grounds, the court declines to comment on the Defendants' additional grounds for summary judgment, namely, the *Rooker-Feldman* doctrine, res judicata, exhaustion, and absolute or qualified immunity.

19